EDNA H. FARRINGTON v. EUGENE SECOR *et al.*, Appellants.

1  **Guardian's Removal from State: Effect on Bond.**  The removal of a guardian from the state is good ground for requiring
2  him to resign, but, where the bondsmen make no attempt to be released, or to remove the guardian, they remain liable.

**When Bond is Breached.**  Where the guardian has had no property over which our courts lacked jurisdiction, is dead, and her estate
3  insolvent, the bondsmen must account here, though there has been no settlement of the guardian's accounts, nor a failure on her part to obey a mandate of the court.

*Appeal from Winnebago District Court.*—HON. P. W. BURR, Judge.

FRIDAY, OCTOBER 5, 1894.

THIS is a proceeding in probate, involving the liability of the defendants as sureties upon a guardian's bond.  There was a finding and judgment against the defendants, and they appeal.—*Affirmed.*

*C. H. Kelley* for appellants.

*Peters & Fisher* and *Sawyer, Abbott & Sawyer* for appellee.

ROTHROCK, J.—On or about the twenty-eighth day of December, 1877, Jenette E. Westbury was appointed guardian of Edna H. Adams, a minor.  She resided in Winnebago county when her appointment as guardian was made.  At the time of said appointment Jenette E. Westbury was the wife of William Westbury.  Edna H. Adams was her daughter by a former marriage with

Edward H. Adams.   It appears that Adams was a soldier in the war of the rebellion, and his said minor child drew a pension on account of the military service of her father.   She had no other property, and the appointment of a guardian was for the purpose of receiving and caring for the pension money.   After the appointment of the guardian she made regular reports to the court in Winnebago county up to the time of her death, which occurred in the year 1888.   There is no valid objection to the form of the reports, nor to the expenditures made for the benefit of the child.   The only real controversy in the case arises upon the fact that in the year 1883 the said guardian removed from this state, with the child, and took up her residence in the state of Minnesota, where she remained until the time of her death.   It is contended by the defendants, the bondsmen of said guardian, that they are not liable for any of the money received by said guardian after her removal to the state of Minnesota, because the courts in this state have no jurisdiction of the money, which never was in this state, and had no jurisdiction of the person of the guardian after her removal from the state.   It does not appear that the defendants at any time made any effort to be released from their obligation as sureties on the bond.   They will be presumed to have known that the guardian made regular annual reports to the court in Winnebago county from the time of her removal from the state to the time of her death.   These reports were received and approved, and the said guardianship was in all respects recognized by the court, the same as though the guardian continued to reside within this state.   The guardian had no separate estate when she died, and her administrator accounted for a part of the amount due to the ward, and said administrator is dead, and there is now no administrator of her estate, either in this state or in Minnesota.   Edna H. Adams,

the ward, is now of full age, and married to one Farrington; and she commenced this proceeding in the form of an application for an order on the defendants for a final accounting and payment of the amount due to her. It appears to us that, under the foregoing state of facts, the defendants are liable. There can be no doubt that removal from the state is good ground for requiring a guardian to resign the guardianship. But where, as in this case, the ward was a child of tender years, and the guardian was its mother, and the sureties in the bond were the only parties interested in a faithful administration of the trust, it must be held that by their failure to petition for the removal of the guardian they manifested an intention to continue their liability on the bond.

It is true that, ordinarily, there is no breach of a guardian's bond until there has been a settlement of the guardian's account, or a failure on his part to obey a mandate of the court requiring him to account. *O'Brien v. Strang*, 42 Iowa, 643; *Gillespie v. See*, 72 Iowa, 345, 33 N. W. Rep. 676; Code, section 2251. But, in the case at bar, there could have been no settlement with the guardian, or anyone representing her. It would have been a useless form to appoint an administrator, and order him to make a settlement of the accounts. The sureties were the proper parties to make such settlement. It is to be remembered that the facts in this case do not show that the guardian removed to another state, and there took into her possession property located in that state, and over which the courts of this state had no jurisdiction. The only estate of the ward consisted of the quarterly payments of pension money. Every dollar received was faithfully reported to the court by the guardian. No extraterritorial orders were necessary to the management of the fund, and so long as the guardianship

was unquestioned the court in this state retained juris-
diction to make settlements and approve accounts.

There are other questions presented, which we do
not think necessary to discuss. The account stated by
the court, and the balance found to be due, appear to
be fully warranted by the evidence. AFFIRMED.