SAMUEL B. ARMON et al., Appellants, v. R. R. CRAIG, Appellee.

**LIMITATION OF ACTIONS**: Guardianship—Failure to Account—Effect.
1  The statute of limitation is not held in abeyance on the bond of a guardian by the fact that the guardian makes no accounting or settlement.

**LIMITATION OF ACTIONS**: Guardianship—Conversion—Effect. Con-
2  version by a guardian of the guardianship funds does not start the running of the statute of limitation on the bond of the guardian.

**LIMITATION OF ACTIONS**: Guardianship—Action on Bond—Accrual.
3  Action on the bond of a guardian is barred in 10 years (1) from the death of the guardian, or (2) from the death of the ward, or (3) from the attainment by the ward of his majority.

**GUARDIAN AND WARD**: Conversion—Failure to File Claim in Pro-
4  bate—Effect. Failure of a ward to file a claim against the estate of an embezzling guardian works no release of the surety on the bond of the guardian.

Headnote 1: 28 C. J. p. 1308 (Anno.)   Headnote 2: 28 C. J. p. 1308 (Anno.)   Headnote 3: 28 C. J. pp. 1308, 1309.   Headnote 4: 28 C. J. p. 1299.

Headnote 1: 45 L. R. A. (N. S.) 451; 12 R. C. L. 1152.   Headnote 3: 45 L. R. A. (N. S.) 461 *et seq.*; 12 R. C. L. 1167.   Headnote 4: 12 R. C. L. 1167.

*Appeal from Wayne District Court.*—HOMER A. FULLER, Judge.

JULY 1, 1927.

Action at law to recover from a surety on guardian's bond, the guardian having died without accounting. Petition was attacked by demurrer, which was sustained by the district court. —*Affirmed* as to appellants Samuel B. Armon, Charles A. Armon, Louisa Minier, Lorena Schroeder, and J. H. Armon; *reversed* as to William Armon.

*F. H. Baltimore* and *Oscar Strauss*, for appellants.

*Evans & Garrett*, for appellee.

KINDIG, J.—Appellants, being beneficiaries under a guardian's bond, bring this action at law, to obtain judgment against appellee, as surety on said undertaking. To the petition a demurrer was filed, which, upon presentation, was sustained by the district court.

Facts admitted by those pleadings are that, on the 12th day of November, 1909, one R. C. Poston, of Corydon, was, by the district court of Wayne County, duly appointed guardian for the property of Lillian Armon, Samuel B. Armon, Charles A. Armon, Louisa Armon, Lorena Armon, and William Armon, then minors. On said date, the said appointee qualified, by executing and delivering to the clerk of said court a bond in said proceedings, with appellee, R. R. Craig, as surety thereon. Said Poston died in May, 1918, without having made any report or accounting of his actions as such guardian. An administrator was appointed for his estate on the 11th day of May in said year. No claim was filed by appellants, nor any of them, against said estate, for the guardianship funds in the possession of said Poston at the time of his death.

The demurrer is based upon five principal grounds, enlarged by 17 subdivisions. In effect, however, this attack was made because: (1) Said action is barred by the general statute of limitations, and (2) no claim was filed against the estate of said guardian for said trust funds. Upon these two considerations the case is to be determined.

I. Appellants at the outset contend that the statute of limitations, as against them, did not commence to run until there

was an accounting or a settlement. made by the guardian, and

1. LIMITATION OF ACTIONS: guardianship: failure to account: effect.

that, because no such accounting was had or settlement made, the cause pleaded is not barred. We are constrained to say that the rule in this state is to the contrary. The only trust here involved is the guardianship, and its existence at all times was known to the wards. In the case of *Ackerman v. Hilpert,* 108 Iowa 247, it is said:

"Appellants' theory is that the statute does not begin to run until the guardian is ordered to account by the probate court, and, as this has not been done, the cause of action is not barred * * * But we do not think the ward, by delaying action to secure this accounting, can postpone the running of the statute."

See, also, *Miller v. Ash,* 156 Cal. 544 (105 Pac. 600); *Reither v. Murdock,* 135 Cal. 197 (67 Pac. 784); *Johnson v. Henshaw,* 80 Okla. 58 (193 Pac. 998); *Davis v. White* (Tex. Civ. App.), 207 S. W. 679; *American Sur. Co. v. Macon Sav. Bank,* 162 Ga. 143 (132 S. E. 636). This reason for the rule seems logical, the principle is sound, and completely disposes of the assignment of error on this point.

II. In support of the action of the district court, appellee urges that the statute of limitations against the claim commenced to run on the 12th day of November, 1909, on the theory that

2. LIMITATION OF ACTIONS: guardianship: conversion: effect.

said petition alleges conversion of said funds took place on that date. This contention cannot be sustained. Said pleading does not pretend to say that the guardianship terminated by the purported private use of said money. The official duties of the guardian continued until the final execution of the trust. Right remained in the wards, notwithstanding this wrongful act, to have the obligations imposed duly performed. It was not necessary for appellants to acquiesce in or ratify the wrong of the guardian and make him their debtor in the ordinary sense of the word. Section 12577 of the Code of 1924 and Section 3197 of the Code of 1897 provide:

"Guardians of the property of a minor shall give bond, with surety * * * conditioned for the faithful discharge of their duties as such guardians according to law, and must take an oath of the same tenor as the condition of the bond."

Said duties of the principal, and therefore of the surety, were not relieved because of the said misappropriation. That wrong did not transform the existing trust requirements into a simple action for money had and received. At all times, there continued the necessity of the guardian to account, make reports, keep the trust funds separate, and finally deliver them to the respective beneficiaries; consequently, such was the burden carried by the surety. Such obligor, through the guardian's ancient conversion of the trust funds, cannot avoid this responsibility. The official relationship continued. There had been no denial or repudiation thereof. Notwithstanding the fact that there was a misappropriation at the time indicated, the duties of the trustee went on until final execution of said trust, and until such closing act, the statute did not commence to run, and during all of said time, the trust was active. Appellee's argument, therefore, does not support the ruling and judgment.

III. Lillian Armon died on or about the 25th day of December, 1909. Death terminated the guardianship as to her. *State Fair Assn. v. Terry*, 74 Ark. 149 (85 S. W. 87); *In re Estate of Livermore*, 132 Cal. 99 (64 Pac. 113); *Whittemore v. Coleman*, 239 Ill. 450 (88 N. E. 228); *Martin v. Caldwell*, 49 Ind. App. 1 (96 N. E. 660); *Cornelison's Admr. v. Million*, 138 Ky. 416 (128 S. W. 316); *Barrett v. Provincher*, 39 Neb. 773 (58 N. W. 292). And the statute of limitations commenced to run from said date in favor of the guardian and his surety. The property and interests of said Lillian were inherited by the appellant J. H. Armon, an adult; and accordingly the statute of limitations as against him commenced to run from said date. Section 11007, Subsection 6. More than ten years expired after said event before the commencement of this action. Therefore, so far as the rights of the said J. H. Armon are concerned, they are barred, and the ruling and judgment of the district court as to him is correct.

3. LIMITATION OF ACTIONS: guardianship: action on bond: accrual.

IV. Majority was reached by the following of said appellants in the years set opposite their names respectively, to wit: Samuel B. Armon, 1910; Charles A. Armon, 1912; Louisa Armon, 1911; Lorena Armon, 1913. Attainment of majority is a termination of the guardianship for the purpose of putting into operation the statute of limitations. *Heath v. Elliott*, 83 Iowa

357; *Wycoff v. Michael*, 95 Iowa 559; *Farrington v. Secor*, 91 Iowa 606; *O'Brien v. Strang*, 42 Iowa 643; *Ackerman v. Hilpert*, 108 Iowa 247; *Thompson v. Thompson*, 178 Iowa 1289; *Owens v. McMahan*, 122 Wash. 191 (210 Pac. 200); *Perkins v. Cheney*, 114 Mich. 567 (72 N. W. 595); *Christenson v. Grandy*, 46 N. D. 418 (180 N. W. 18); *Goble v. Simeral*, 67 Neb. 276 (93 N. W. 235); *Bybee's Exr. v. Poynter*, 117 Ky. 109 (77 S. W. 698); *American Sur. Co. v. Hardwick* (Tex. Civ. App.), 186 S. W. 804. The reason for this rule of law is that, upon reaching such age limit, the ward is entitled to demand that the guardian account and settle. That being true, an action upon the bond would be barred, under said statute, in ten years from the time the said right accrued against the guardian. Suit was commenced in this case on the 19th day of June, 1925. Considerably more than said time elapsed from the date each said ward became of age. Therefore, the statute clearly ran, and was a bar to the action; and the district court, in so holding, was within the law.

V. What has been said does not dispose of the case so far as it relates to appellant William Armon. He became 21 on May 24, 1924. Ten years had not expired thereafter before the commencement of the action; but, on the date William arrived at said age, the guardian was dead. This death occurred in May, 1918. The guardianship, then, so far as said ward is concerned, was terminated by said decease. Such event ends a guardianship, and starts the running of the statute of limitations. *Hill v. Arnold*, 199 Mass. 109 (85 N. E. 97); *Title Guar. & Sur. Co. v. Burton*, 67 Okla. 320 (170 Pac. 1170); *American Bond. Co. v. Logan* (Tex. Civ. App.), 132 S. W. 894; *Hughes v. Langdon*, 111 Neb. 508 (196 N. W. 915); 28 Corpus Juris 1096, Section 114.

Said statutory period did not expire before this suit was begun. The time was seven years only. That being true, the right of this ward is not barred, and the district court was in error in sustaining the demurrer as to him; and accordingly there must be a reversal on this proposition.

VI. Lastly, argument is made that, even though the claim of William is not barred by the general statute of limitations, it cannot be enforced because he did not file same in the matter of

4. GUARDIAN AND
WARD: conver-
sion: failure
to file claim in
probate: effect.

the estate of the said guardian, and consequently a release of the surety results. To sustain the doctrine of discharge and bar, the following authorities are relied upon: *Ackerman v. Hilpert,* supra; *Auchampaugh v. Schmidt,* 70 Iowa 642; *In re Monahan,* 190 Iowa 578; *First Nat. Bank v. Drake,* 185 Iowa 879.

In the *Ackerman* case there is this declaration:

"The relation of debtor and creditor existed between them [the guardian and ward, when ward became of age], and then the statute began to run."

But in that case it is apparent the court had under consideration the time when a guardianship terminates, and when the statute of limitations commences to run thereafter.

Said *Auchampaugh* case involved a suit on a promissory note. Action was against the surety, and he demanded his release because the statute of limitations had run against the principal. A promissory note was also involved in *First Nat. Bank v. Drake.* Suit was against the guarantor. The same plea was made. And the *Monahan* case involved the question of contribution between co-sureties. Distinguishing features are immediately discernible. These were all contractual relationships the bases of which were the payment of a debt or equitable reimbursement.

The case at bar is broader in its scope. Here, the issue is not when the general, or even the special, statute of limitations begins to run. The question is deeper than that. It goes to the very foundation of the liability of a surety on a guardian's statutory bond. There is more in the equation than just debtor and creditor. There is an unexecuted trust. The relationship is not a mere contract to pay a debt, but rather a contract to perform a statutory obligation. Said guardian was required to faithfully discharge his duties according to law. Such was the condition of the bond executed by the surety. This was the obligation assumed by appellee. That was the right which the obligee could demand.

In *In re Estate of Stude,* 179 Iowa 785, we said:

"That the guardian may have made use of the funds of his wards in his private business did not constitute the transaction a loan * * *. The funds never became the property of the decedent, as between him and his wards, but continued that of his

wards * * *. As decedent never had title thereto, the widow had no distributive share therein."

In *Donnell v. Dansby*, 58 Okla. 165 (159 Pac. 317), it is said:

"Section 6346, Rev. Laws 1910, requires that all claims must first be presented to the executor or administrator before an action can be maintained thereon; and it is claimed that by reason thereof plaintiffs' cause of action is barred. Plaintiffs were not creditors of deceased, but are seeking an accounting of a trust fund held by him, which he had wrongfully misappropriated. * * * While the property of the ward may come into the hands of the administrator upon the death of the guardian, the trust does not descend to him, but it is a personal trust reposed in the guardian * * *."

Courts have laid down the rule that the surety is not released through the failure of the ward to file in such probate proceedings his claim within the time limited by the special statute. 28 Corpus Juris 1299, Section 502; 12 Ruling Case Law 1167, Section 57; *Smith v. Smithson,* 48 Ark. 261 (3 S. W. 49); *Ashby v. Johnston*, 23 Ark. 163 (79 Am. Dec. 102); *Donnell v. Dansby*, supra. Unless the ward chose to adopt the wrong of the guardian as an authorized act, and thereby make that official his debtor, he was not limited in his remedy to the filing of a claim against the said estate as a mere financial obligation thereof, and thereby compelled to run the gauntlet and hazards contingent upon such proceeding. William did not so choose. He did not ratify the conversion, but in his action demands of the surety that the obligation of the bond be met, the trust executed, and compensation made for the loss occasioned by the failure of the guardian to fulfill the duties demanded of him by said Code section. The demurrer as to the appellant William Armon should have been overruled. There are other propositions argued, but they are immaterial to a decision of the case, and therefore are not discussed.

On the appeal of Samuel B. Armon, Charles A. Armon, Louisa Minier (formerly Louisa Armon), Lorena Schroeder (formerly Lorena Armon), and J. H. Armon, the ruling and judgment of the district court is affirmed. On the appeal of appellant William Armon, the ruling and judgment of the dis-

trict court is reversed, and cause remanded.—*Affirmed in part; reversed in part.*

All the justices concur.